UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                                                                                    23-cr-610 (PKC)

           -against-                                                                          <u>OPINION AND ORDER</u>

WILSON DANIEL FREITA DA COSTA,

                Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Non-party Leslie Nelson has filed a motion to intervene for the limited purpose of moving to redact or anonymize references to his name contained in the post-trial filings in this case. Specifically, Nelson moves to redact or anonymize all references to him contained in the government's memorandum of law in opposition to defendant's post-trial motions and the Court's Opinion and Order of February 14, 2025 (the "Opinion"). (<u>See</u> ECF 82, 91.) Nelson also seeks an Order requiring the parties to anonymize future references to him in public filings and to seal his own filings in support of this motion.

        The motion to intervene for this limited purpose will be granted, but the Court concludes that the right of public access significantly outweighs the countervailing interests identified by Nelson. His sealing motion will be denied.

        Familiarity with the charges against Wilson Da Costa and the underlying proceedings is assumed. <u>See generally</u> <u>United States v. Da Costa</u>, 2025 WL 507751 (S.D.N.Y. Feb. 14, 2025). On November 18, 2024, a unanimous jury found Da Costa guilty of one count of wire fraud, 18 U.S.C. §§ 1343 and 2, and two counts of aggravated identity theft, 18 U.S.C. §§

1028A and 2. (ECF 73, 105.) On March 16, 2025, the Court sentenced Da Costa principally to a term of 84 months' imprisonment. (ECF 105.) The charges against Da Costa related to the forgery of certain letter-agreements that were necessary to facilitate the so-called Angola Fast Power Deal. See 2025 WL 507751. At the time, Da Costa was an executive at General Electric ("GE"), and one witness described him as GE's "leader" in Angola. Id.

Nelson was Da Costa's manager at GE. Id. at *4. The Opinion and the government's memorandum of December 20, 2024 summarized some of the trial evidence concerning Nelson. Nelson and Da Costa participated in group text messages with the founder of AEnergia, Ricardo Machado. 2025 WL 507751, at *4. As recounted in the Opinion, the government submitted evidence that Da Costa and Nelson expected Machado to compensate them with side-payments for their work facilitating the Angola Fast Power Deal. See id. Text messages received into evidence reflected frustration by Da Costa and Nelson that Machado did not pay them more than $5 million each. See id. The Opinion quoted extensively from those messages. 2025 WL 507751, at *4.

Witnesses referenced Nelson throughout the trial, due in part to his position in GE's corporate hierarchy, his involvement in the Angola Fast Power Deal, and his inclusion in group emails about the underlying transaction. By the Court's count, eight trial witnesses referred to Nelson, and his name or image appeared in numerous trial exhibits. (See, e.g., Tr. 62-63, 156, 194-96, 364, 471-72, 492, 751, 780; GX 3, 1419, 1423, 1496.) Da Costa also mentioned Nelson by name in his post-arrest interview (Tr. 471-72) and an audio recording of Nelson's voice was received into evidence (Tr. 475; GX 310A). The Court received into evidence portions of text messages between Da Costa, Nelson and Machado. (GX 303-01, 303-23, 303-27, 305-01, 305-06, 305-07.)

Nelson states that friends, acquaintances and business colleagues have questioned him about the references to him contained in the Opinion and the government's post-trial memorandum. (Nelson Dec. ¶ 6 (ECF 98).) Nelson states that he previously had been contacted about his possible interest in seeking a position as a "high-level corporate officer" but that an attorney who conducted a background check on Nelson's behalf recommended that he withdraw due to publicity about this case. (Nelson Dec. ¶ 7.) Nelson states that a reporter at a well-known African business publication has asked to interview him. (Nelson Dec. ¶ 8.) He states that he is "concerned" that the references to him on the public docket will irreparably harm his reputation, damage his business and employment prospects and affect his family members. (Nelson Dec. ¶ 9.) He urges that he has a strong privacy interest in redacting or anonymizing references to him in filings to the public docket, as well as a due process interest in not being associated with participation in an uncharged crime.

"Judicial documents are subject at common law to a potent and fundamental presumptive right of public access that predates even the U.S. Constitution." Mirlis v. Greer, 952 F.3d 51, 58 (2d Cir. 2020). "Circuit precedent further establishes that the public's presumptive right of access to judicial records is also independently secured by the First Amendment." Id. at 58 n.5. To determine whether the public has a common law right to inspect and copy a particular record, a court engages in a three-party inquiry. Id. at 59. First, it determines whether the record is a "judicial document." Id. Second, if the record is a judicial document, the court determines the weight of the presumption of access. Id. Third, the court must identify all factors that weigh against disclosure and balance those factors against the weight afforded to the presumption of access. Id.

Nelson does not dispute that the documents at issue are judicial documents afforded a strong presumption of public access. (ECF 97 at 7.) Indeed, "a presumption of openness inheres in the very nature of a criminal trial under our justice system." Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 610 (1982). "[S]uch access is critical as it enables the public to monitor the actions of the courts and juries to ensure 'a measure of accountability' and bolster 'confidence in the administration of justice.'" Mirlis, 952 F.3d at 60 (quoting United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995)).

Nelson urges that the interests of privacy and due process outweigh any presumption of public access in this case. He principally relies on In re Smith, 656 F.2d 1101 (5th Cir. 1981), which ordered on a writ of mandamus the anonymization of a third party identified as the recipient of bribery payments in the government's written submissions at defendant's plea hearing. Media reports then identified the recipient and his employer refused him certain retirement benefits as a result. Id. at 1104-05. The Fifth Circuit concluded that the petitioner's economic and reputational interests had been harmed, and that "no legitimate governmental interest is served by an official public smear of an individual when that individual has not been provided a forum in which to vindicate his rights." Id. at 1105-06. "It is equally clear that Petitioner's name was not implicated during either of the District Court's procedural obligations under Rule 11 to determine the factual basis for the defendant's pleas of guilty." Id. at 1106. The Fifth Circuit characterized the use of the petitioner's name as an "attack" on his "character" and "good name" that did not "afford[ ] him a forum for vindication." Id. at 1107.

Nearly thirty years later, the Fifth Circuit distinguished Smith in affirming a district court's ruling that denied sealing or redaction of a non-party applicant named in briefing over the admission of out-of-court statements by co-conspirators under Rule 801(d)(2)(E), Fed.

4

R. Evid.  United States v. Holy Land Foundation for Relief & Development, 624 F.3d 685, 692-93 (5th Cir. 2010).  Though the district court concluded that the applicant's due process rights had been violated, it declined to expunge references to the applicant.  Id. at 689.  The Fifth Circuit affirmed, noting that it had never adopted the proposition that a person could not be implicated as a possible co-conspirator in another's criminal case.  Id. at 691.  In the context of briefing about the admissibility of co-conspirator statements, the third-party applicant was identified "in furtherance of a legitimate purpose," supporting the conclusion that the right of public access outweighed the privacy interests of co-conspirators.  Id. at 692-93.

Of course, these Fifth Circuit decisions are not binding on this Court, and are afforded persuasive weight.  Nelson cites no comparable decisions from the Second Circuit, which has repeatedly emphasized the robust right of public access to judicial documents. "Without monitoring . . . the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings.  Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions." Amodeo, 71 F.3d at 1048; see also Brown v. Maxwell, 929 F.3d 41 (2d Cir. 2019); Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006).  Public access to a criminal trial has especially significant value.  Hartford Courant Co., LLC v. Carroll, 986 F.3d 211, 221 (2d Cir. 2021) ("it is well settled that public access plays a positive role in the functioning of criminal proceedings.") (collecting cases); Press-Enterprise Co. v. Superior Ct. of California for Riverside Cnty., 478 U.S. 1, 12 (1986) ("public access to criminal trials . . . is essential to the proper functioning of the criminal justice system.").

But even applying the Fifth Circuit's decisions in Smith and Holy Land Foundation, Nelson has not demonstrated a compelling interest that outweighs the presumption

of public access. The text exchanges involving Nelson were received into evidence as co-conspirator statements made in furtherance of an uncharged honest services fraud conspiracy and were admitted under Rule 801(d)(2)(E). (ECF 69, 70; Tr. 651-57.) The Fifth Circuit's Holy Land Foundation decision held that briefing on the admissibility of such statements had a legitimate purpose and that the presumption of public access outweighed the applicant's privacy interests. 624 F.3d at 692-93. Here, the right of public access is even weightier because evidence regarding Nelson was presented to a jury as part of a public trial. The summary of this evidence contained in the government's memorandum and the Opinion were important to the adjudication of Da Costa's post-trial motion brought pursuant to Rules 29 and 33, Fed. R. Crim. P. Nelson's name was used for a legitimate purpose as part of the judicial function, as opposed to the stray references constituting a public smear, as described in Smith. The privacy and due process interests invoked by Nelson do not outweigh the strong right of public access to the full contents of the government's post-trial briefing and the Court's adjudication of Da Costa's motion.

While Nelson has not demonstrated that redaction or anonymization is appropriate, the Court emphasizes that the government brought no charge against Nelson in this case and that the jury's finding of guilt as to Da Costa ought not be understood as a finding of criminal conduct on the part of Nelson.

CONCLUSION

Nelson's motion to intervene for the limited purpose of redacting or anonymizing references to his name is GRANTED but the motion to redact or anonymize is DENIED. The Clerk is respectfully directed to terminate the motion (ECF 96) and to terminate Nelson's appearance on the docket.

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
       May 16, 2025

7